THE·TOWNSHIP OF LONG BEACH, complainant,

*v.*

DANIEL B. FRAZIER COMPANY, defendant.

SUIT No. 2—Docket 86/302.

SUIT No. 3—Docket 86/303.

SUIT No. 4—Docket 86/306.

SUIT No. 5—Docket 87/661.

[Decided July 8th, 1932.]

*Mr. Howard Ewart,* for the complainant.

*Mr. Joseph H. Carr,* for the defendant.

BERRY, V. C. (Orally.)

Let it be noted on the record that both sides rest this morning without the taking of any further testimony and without the submission of any further evidence.

I am going to dispose of this interest question now, before the argument proceeds any further, unless what you have to say is related in some way to the interest.

This controversy now resolves itself into a question of what rate of interest the municipality is entitled to collect upon a redemption of the properties involved from the tax sales which are here the subject of foreclosure. It is conceded that there is now no issue with respect to the rate of interest on the amount required to redeem from the various tax sales, except as to the taxes subsequent to that for which the property was sold. The controversy is, therefore, with reference to what rate of interest is chargeable on subsequent municipal taxes or liens. It is conceded that without statutory authority no interest whatever is collectible—this on the authority of *City of Camden* v. *Allen, 26 N. J. Law 398; Town of Belvidere* v. *Warren Railroad Co., 34 N. J. Law 193; State, ex rel. Brennert* v. *Farrier, 47 N. J. Law 75; Lehigh Valley, &c., Railroad Co.* v. *City Collector of Jersey City, 93 N. J. Law 284; 108 Atl. Rep. 224,* and *Baker* v. *City of East Orange, 95 N. J. Law 365; 111 Atl. Rep. 681.*

Section 603 of the General Tax act of 1918 provides that the governing body of each municipality shall have power to fix, by a resolution, the rate of interest to be charged for the

non-payment of taxes or assessments, on or before the date when the taxes become delinquent; which rate for non-payment shall not exceed the rate of nine per centum per annum or be less than seven per centum per annum.

It is conceded that the complainant municipality never did adopt any resolution fixing the rate of interest which should be charged upon delinquent taxes. It is contended on behalf of the municipality, notwithstanding that fact, that interest is collectible on such taxes at a rate of not less than seven per centum; while, on the other hand, the defendant contends that since no such resolution was passed, and since the tax is not a debt within the ordinary sense of the meaning of that term, no interest whatever is chargeable.

I think that the whole scheme of the Tax act, however, contemplates that interest shall be paid by property owners upon delinquent taxes; but it is not necessary here to determine that precise question, because of the provision of section 25 of the tax sale revision of 1918 (*P. L. 1918 p. 888*), to which I am referred by counsel for the complainant municipality. That section provides that the officer making a tax sale shall strike off and sell to the municipality in fee for redemption at eight per centum, any parcel of real property for which there shall be no other purchaser, and the municipality shall have the same remedies and rights as other purchasers, including the right to bar or foreclose the right of redemption. This section of the tax sale revision, which revision is independent of the General Tax act, fixes, as I think, definitely, the amount of interest chargeable against property owners upon redemption from tax sales; not only as to the sum mentioned in the certificate of tax sales, but also as applied to subsequent taxes or municipal liens which are required to be paid upon redemption.

Section 42 of the tax sale revision, as it existed at the time of the tax sales here involved, provided that in case the certificate of tax sale is held by the municpality, the amount required for redemption shall include all subsequent municipal liens with interest and costs. Counsel for the defendant contends that this section should be read in connection with

the following section 43, providing for redemption in case the certificate of sale is not held by the municipality. Section 43 provides that in such case the amount required for redemption shall include all sums for subsequent municipal liens and interest and costs thereon actually paid by the holder of the tax title, or his predecessor therein, together with interest on the amount so paid at the rate chargeable by the municipality. The contention is, that inasmuch as no rate applicable to delinquent taxes has been fixed by a resolution of the municipality, then no interest whatever is collectible. This position, I think, is untenable, because not only is it the scheme of the General Tax act, but also that of the Tax Sale Revision act, apparently, that interest shall be collected by the municipality, not only prior to the sale for delinquent taxes, but also upon redemption from such tax sale; and as applied to this controversy, I consider that section 25 of the tax sale revision is controlling and that sections 42 and 43 are entirely separate and distinct. The interest referred to in section 42, in my judgment, refers to the interest mentioned in section 25, which I think is alike applicable to the delinquent taxes for which the sale was made and the subsequent municipal liens which are required to be paid upon redemption.

The views which I have expressed on this point are confirmed by the construction placed upon section 603 of the General Tax act by Mr. Justice Black, in his book on Taxation in New Jersey, 3d edition, at page 514, where he construes that section of the act as mandatory for the collection of interest upon delinquent taxes at no less than seven per cent. wherever the governing body of the taxing district has not fixed a higher rate. Mr. Justice Black was entirely familiar with the Tax act now under consideration, and the construction placed upon it by the courts of this state, and he wrote the opinion in *Baker* v. *City of East Orange,* to which reference has been made.

His text assumes, I think, that interest at seven per cent. is collectible upon delinquent taxes without a resolution of the municipality. But nothing is to be gleaned from his recital of the pertinent portions of the text of the Tax Sale Revision act which would aid in the construction thereof.

The further question raised by counsel for the defendant respects the subsequent municipal liens that may be required to be paid by the landowner upon redemption. He contends that only those subsequent taxes which had become liens under the statute at the time of the filing of the bill are required to be paid upon redemption; while, on the other hand, counsel for the complainant insists that all taxes or assessments which have become a lien up to the date of the decree are required to be paid. In my judgment the decree should speak as of the date of its entry, and should require payment of all taxes and assessments which have become a lien at that time and which have been the subject of proof in the cause.

During final hearing objection was made to the admission of testimony respecting the location and boundary lines of the property described in the certificate of tax sale on the ground that it was an attempt at a variation of a written instrument under seal—of the certificate itself. That objection is now renewed in opposing the entry of a decree. The testimony was admitted, and I think properly so, because it was offered, not for the purpose of varying the terms of the certificate of tax sale, but merely to identify the lands sold with those described in the bill of complaint.

Application is now made by counsel for the complainant for an allowance of counsel fees in each of the five foreclosure suits, and he asks for a total fee of $5,000, to be divided among the several suits as follows: Suit No. 1, docket 86, page 301, $250; suit No. 2, docket 86, page 302, $1,500; suit No. 3, docket 86, page 303, $150; suit No. 4, docket 86, page 306, $100; suit No. 5, docket 87, page 661, $3,000.

Section 49 of the tax sale revision as amended in 1928 (*P. L. 1928 p. 382*), provides that:

"After bill in equity had been filed, redemption shall be made in said cause only and the court shall, upon application at any time after bill filed, allow costs, which shall include reasonable fees for an examination of the title to the lands described in the bill filed, disbursements incurred by the purchaser and his counsel and counsel fees commensurate with the services rendered, in addition to the other fees and expenses in this act provided."

I think here is expressed a clear legislative intent that all expenses incident to the foreclosure of a tax title shall be paid by the person redeeming from the tax sale, and I think it is clear that the intent is also, especially in cases of municipalities, that the entire costs of such foreclosure, including counsel fees, shall be paid by the person redeeming, and that the whole procedure shall be without expense, so far as it is possible, to the taxpayers of the municipality complainant. Any other construction placed upon the act would, of course, unequally distribute the burdens of taxation, and innocent taxpayers who have paid their taxes promptly would be saddled with the costs and expenses incident to the delinquencies of their neighbors. The purpose of the statutory provision which I have recited, it seems to me, was to avoid that very consequence. Therefore, I have no hesitancy in saying that counsel fees are not only warranted by the statute, but should be allowed in such sum as will be compensatory for the services rendered, so that the municipality will not be called upon to pay any additional fees.

Five suits to foreclose are involved in this application, and ordinarily it would probably be appropriate to distribute the total counsel fee allowed equally among the five suits, except for the fact that the amount required for redemption in the several suits is quite disproportionate. Counsel for complainant has handed me his computation of the amounts required for redemption, exclusive of costs and counsel fees, in each case.

The amount required in suit number 1 is $2,376.34; in suit number 2, $17,428.43; in suit number 3, $1,083.90; in suit number 4, $940.25, and in suit number 5, $45,823.36, making a total of $67,652.28 in the five suits.

It is true that four of these suits were in most respects prosecuted as one action, although there were four separate bills filed and four separate sets of pleadings. The fifth suit is the subject of a bill filed at a later period, but all five suits were heard at the same time and on the same days, although proof was required and submitted in each of the cases separately.

924 

Counsel for complainant has recited in detail the services which he has rendered in these several actions, such recital being supported by a lengthy affidavit, and, considering the importance of the proceedings, not only to the complainant, but also to the defendant, and considering the fact that no obstacle which could be interposed to the successful completion of these several proceedings has been omitted by counsel for the defendant, and in view of the total amount of the taxes which is the subject of these several proceedings, I am constrained to say that a fee of $5,000 is not unreasonable under the circumstances. If it were appropriate to make this allowance in one lump sum, I would have no hesitancy in doing so, but in view of the amounts required for redemption under the several decrees to be entered, and the fact that four of the tracts of land involved are contiguous, and all five tracts are owned, subject to the tax sale, by the one defendant which, only, has the right to redeem, it seems to me that the distribution of the total fees as suggested by counsel for the complainant, which distribution is practically proportionate to the amounts severally involved, is entirely equitable and appropriate. Those fees will be distributed accordingly, and will be included in the taxed costs to be paid by the defendant upon redemption in each particular case.